Good morning. May it please the court. My name is Saweli Keedy and I represent the appellant in this matter, Thomas Mautone. Your Honors, would you like a brief review of the relevant factual background? I think we're good there. There's some interesting issues. I just get right to the issues in this one. Yes, Your Honor. Your Honors, Mr. Mautone respectfully requests this court finds that the trial court erred and abused its discretion when it unreasonably denied Mr. Mautone's motion to continue this trial. The trial court was aware that Mr. Mautone's mother was in end-of-life care in the ICU and subsequently passed away during the trial. This unfortunate event affected Mr. Mautone's decision on whether to testify, thus depriving him of his constitutional rights to a fair trial, the right to testify and present a defense, and due process of law. So can I ask, it seems like the discussion about going to see, I mean this is obviously a very tragic situation, but no one knew that she was going to die when the discussion first happened in the court. And at that point it seemed like they were anticipating that maybe she'd still be alive at the end of trial and he would visit then. It was sort of discussed both ways. And so given that, I'm not sure how it was an abuse of discretion for the district court to think, well, he can visit later. Thank you for that question, Judge Freeland. And I think I should clarify that point. Now, the note that Mr. Mautone received, the same note that defense counsel then gave to the government, indicated that she was in could pass away at any minute. I think the any minute makes it clear that she could die at any minute. And within 24 hours, in fact, she did die. Now, did I sufficiently answer your question, Your Honor? Yeah, I just, I mean, if that's true, I'm not sure why they were talking about visiting at the end of trial. Yes, I believe that they were hoping that Mr. Mautone could visit her at the end of trial, as I, my understanding, his trial was expected to last no longer than three to five days. Here it began on May 9th and he was convicted on May 13th. So I thought, I believe that they were hoping that that'd be sufficient time for him to make it. However, just like in Flint, unfortunately he did not. Now, I see in the record, I'm looking at page 878, which is in the transcript where this occurred. And I do see the note. I have a note from a nurse. Is a copy of the note in the record? I didn't, I don't recall actually seeing like a, sometimes district courts will actually have the note put into the record. I don't believe so, Your Honor. I believe that the note was tendered orally to the court, but provided via email to the government. Okay. Now, in terms of standards of review, a decision to deny a motion to trial, a decision to deny a motion to continue trial made on the first day of trial was reviewed for absence of discretion, as Judge Freeland pointed out. Now, a trial court clearly abuses its discretion. A denial of the continuance was arbitrary or unreasonable. And in United States v. Flint, this circuit established four factors to be used when determining whether a district court erred and abuses discretion. Now, those four factors are one, the defendant's diligence preparing for trial. Two, the likelihood that a continuance would serve its stated purpose. Three, the inconvenience to the court and opposing party. And four, the harm the defendant suffered as a result of the continuance. Can I ask about the last one? So, is there evidence that he was planning to testify? I mean, I know now you're saying that he would have, but do we, can we tell that from the record? Now, Your Honor, unfortunately, we cannot clearly discern that from the record, and thank you for that question. However, as a trial attorney myself, it is the government's burden to put on their case and it's our burden to dismantle that brick wall or to make sure that they cannot dismantle that brick wall of unreasonable doubt. Now, it's often prudent to inform our client, the defendant, that you do have the exclusive right to decide to testify or not testify. However, strategically, it can also be determined when the government rests its case in chief if the testimony of the defendant is necessary or it's not. Because if the government has not met their burden, why open the defendant up to potential waiver of their Fifth Amendment rights? Now, unfortunately, here, the death of his mother occurred during the government's case in chief. Mr. Matone was clearly and understandably distraught at the fact that because of his actions, he is now in trial fighting for his life and he cannot say goodbye to the person who gave him that life. Now, the Clohan court made clear that the, I apologize, Your Honor, your question was the denial of prejudice in Mr. Matone's right to present a defense. Now, the Clohan court made clear that the prejudice standard is less stringent than the clear showing of actual substantial prejudice. The standard that would apply would be, well, the court should focus the inquiry to the extent to which the aggrieved party's right to present his defense has been affected. As a trial attorney, I personally would hesitate to put anyone on the stand because, as we well know, just because you prep them left and right does not mean under the stress and pressure of being before a tribunal, 12 jury members, and the public, they could go, as we say, left. However, here, I think that decision was even harder to make because you now have a defendant who is grieving, who's suffering a traumatic event, and that aspect, that pain hanging over his head would have made that decision extremely, extremely more difficult to go forward on. Are you saying that but for this incident involving his mother, he would have taken the stand? No, Your Honor. I'm not saying that unconclusively. I'm saying that strategically, that determination would have been allowed to be made but for the death of his mother. So you're saying but for the death of his mother, you couldn't take the stand because I think you said he was unsuitable to take the stand at that point. I would agree that he was unsuitable to take the stand because of the death of his mother. However, I would just like to remind the court that a defendant is not required to take the stand in this offense. So it would be hard for me to say but for the death of his mother, he would have certainly taken the stand because there's other factors that could have determined that. You're saying that deprived him of the choice then? Excuse me, Your Honor? It deprived him of the choice. Yes, Your Honor. It deprived him of his well-founded decision. He is dealing with, I think, one of the most traumatic things anyone could go through, the death of their parent. Now he's also on trial, federal trial, fighting for his life before 12 jurors. He's asked the court for permission to continue the hearing and as we read in the record, the judge denied that. Now all of that is hanging over his head in a one-week trial. I've done trial for two months sometimes. That gives you the space and time to make decisions a lot less rushed, if you will. Is there anything in the record other than the facts about his mother's situation that supports your contention that he was deprived of the choice? The only part of the record I think that lends an answer to your question, I believe, is where the sitting judge mentioned right during the jury instructions, I believe that was right after Kevin Thomas testified, that sitting here I can see that this has been on, something to the effect of this has been on your mind or this has been over you. If you would like, I can give you those exact words. I think what the government's going to say, so I want to get your take on it while I've got you here, is the government's going to say, well, in other cases like this, I don't know, Clone or Klein, however you pronounce that case, the one we asked you guys to talk about, that there was more of a record, kind of getting to Judge Reyes's point, there was more of a record showing prejudice. And they're going to get up here and say, you know, the defendant hasn't shown any prejudice based on how the trial court handled here. Can you address the prejudice issue? That's kind of the same question Judge Reyes asked, but in terms of prejudice, walk us through what we can look to in the record to say, hey, this is like Clone. Yes, Your Honor. First and foremost, in terms of Clone, I think it applies here as well. The court directly said it is self-evident that an individual's demeanor would be affected by the knowledge that his son was on the brink of death. Now, the demeanor of someone testifying, as Clone indicated, is paramount and important to the jury finding their credibility. Now, here in Matone, sadly, as a result of the trial court's denial of the brief continuance, Ms. Matone was significantly distracted and tormented. And consequently, under realistic appraisal of psychological tendencies and human weakness, there's no doubt that Ms. Matone suffered from an unstable and traumatized mindset as a result of the denial and was therefore unsuitable to take this stand. But, no, that's a, I get where you're going here. Was there anything in, and I know you were not the trial attorney. You're doing a great job memorizing the record, which is very hard to do. But I didn't see anywhere in the trial record where defense counsel, in trial, made the point you just made. You made it very eloquently right here. I don't, I didn't see anywhere the trial, the trial attorney saying, Your Honor, look, you got to understand my client is right now. Yes, Your Honor. I think it's clear that I articulate and I deliver my points with a little bit more oomph than trial counsel did. I think that is very clear even in how trial counsel asks for the continuance. For example, Your Honor, I may not want to be here today, but I need to be here today. And I feel if trial counsel had made that distinction, if she had made that distinction before the judge, we would not be sitting, perhaps we would not be sitting or standing where we are today. However, the one thing a transcript doesn't do is give us an indication of body language, that vibe in the courtroom. But like, should counsel have asked for a mistrial? I mean, or something like, should counsel have said, Look, I would like to put my client on the stand right now, but I can't because of this thing that happened with his mother. I'd like a mistrial. Perhaps counsel could have done that. But like I said in Clowen, I believe it's self-evident that the death of someone's mother would affect their demeanor and their mental ability to be present. And going back to my point about being articulation and the oomph, I think that if we look at how trial counsel even worded the motion to continue, there's something that's not reflecting the transcript. Perhaps she was a little bit more intimidated by the judge. Perhaps she did not want to risk annoying the judge because as a trial attorney, I know that if I piss off the judge, excuse my French, that's not going to affect me. That's going to affect my client. And I do believe that trial counsel did a fantastic job during this trial because as we saw, he was not found guilty on all the counts. Now, our hindsight bias, of course, would lead us to hope that Mrs. Lee had done something differently. But unfortunately, we are where we are today based off the facts as we appear in the transcripts. Your Honors, unless you have further questions or would like me to touch on the other three factors, which I believe weigh heavily in favor of Mr. Matone, I will reserve the rest of my time. Why don't you reserve, actually? Thank you, Your Honor. Thank you, counsel. Good morning, and may it please the Court. I'm Hannah Horsley appearing on behalf of the United States. I think all of the Court's questions here go directly to the problem with this record and the problem that the District Court was faced with here. And of course, this Court has to look only at the facts that were known and presented to the District Judge at the time the decision was made. So all of this speculation now about what might have been, what the defendant may have been suffering, what feelings this had, what this caused on his ability to make the decision whether to testify, are simply not reflected anywhere in the record. Not only at the time the request was made did he say anything about this weighing on him or the psychological consequences or his decision to testify, but at multiple times throughout the trial. So not only at the point, as Judge Friedland referenced, of when he may have chosen to testify, there was nothing at that point. The about whether this was a fact or his decision not to testify. The next day when they were going into the jury instruction conference, the District Court said, we'll be taking out the instruction about the defendant testifying. There's no reference to it at that point. Later that day, the defense asked for the defendant to be allowed to not be present for the jury instruction conference, which was just with counsel in the court, so that he could go prepare for making travel arrangements for the service. This was the first point at which the defense counsel let the judge know that she had in fact passed away the night before. And she asked for the opportunity again for him to be able to travel at the end of the week to get to the funeral service. And the judge said, no problem, we will definitely accommodate that. So he, at the time he requested to pass on the jury instruction conference. And then again, on the very last morning, the court was still deliberating on Friday morning. The jury had two questions, and so they were in the courtroom. And again, defense counsel said, if the verdict's not backed by one, he'd like, he wanted to waive his appearance for the taking of the verdict. And the judge agreed to that, and the government had no objection to that. That didn't have to happen in this case, unlike in Clone, because the verdict came back in time. So we're in a situation where- All right, can I shift your focus? I'd like to ask about the 404B issue in this case. So can you explain what the propensity-free chain of reasoning was supposed to be for the jury on the 2012 conviction? Yes. It was clearly set forth as being relevant to intent, to knowledge, and to lack of mistake. And it was already anticipated at that- Can you explain how? Tell me what they knew about the 2012 conviction, and what they could reasonably infer from it. So they knew that the 2012 conviction involved a high-yield investment program, that the defendant had pled guilty to wire fraud, and had admitted in the plea petition that he deceived people to obtain their money, made false pretenses to obtain the money. And that the defense at this point was likely to be that they were all scammed by Mr. Yang, that the defendant didn't have an intent to defraud, and was himself scammed by Yang. And so they made the point, and this is at 1 ER 31, that this was highly probative, especially of knowledge and lack of mistake, that he wasn't going into this blindly, that he had this prior experience just two years earlier. Not going in blindly. I mean, so what did they- tell me a little bit more. Did they know anything more about the 2012 conviction? I'm actually not even sure. You said this high-yield thing. I'm not even sure that is actually something they knew. It seems like they knew that it was an investment fraud. They did know it was an investment fraud. I thought it was clear at that point that it was a high-yield. I don't know where that is. I mean, maybe I'm missing it. But it seems like they knew he was convicted of investment fraud, because that's basically what the indictment says. And then that's what they had, as far as I can tell. Okay. But the argument was that it was not for propensity, and they made it very clear this is not for propensity, it's not for character. Well, they were told you can only consider it for intent, but I'm not sure what they even make of- tell me how they could have properly used it for intent, given that all they knew was it was an investment fraud. Well, this court allows the introduction of prior convictions that involve some kind of deceit. It doesn't have to even be the same crime if it's probative of a material point. And as this court recognized in McCollum, which is at 732 F. 2nd, 1419, this is from 1984, a prior act can be probative of intent because the fact that the defendant had an unlawful intent at the time of the prior act makes it less likely that he had lawful intent when he performed the acts that are charged in the present case. So when you're looking at- I mean, I don't have that case in front of me, but what you just read sounds- how is that not saying because he's a bad person, he had a bad intent once, so he has a bad intent again? I'm not sure. It's not like a method. It's not like knowledge. I mean, what is that, that you just said? I'm reading from the case, which is, I think, a way of articulating that if you knew better the first time and had clearly intended to commit wire fraud, the fact that you're now charged with wire fraud and know what fraud involves, it's probative of the fact that you have a prior conviction for wire fraud. And I think importantly here are the knowledge and lack of mistake components of this as well. Let me ask you, as I understand it, what was introduced to the jury on the 404B was a copy of the South Carolina indictment. That's correct. And that defense counsel obviously objected to 404B, but did not object to the form of that being introduced, correct? That's correct. Now, as I read the indictment, paragraph three of the scheme and artifice, which is that ER is a little tough to read because it keeps getting stamped over each other. I think it's ER 107. It says that the defendants did falsely state to the potential investors that the investment trading program was risk-free, that the investors' money could not be lost, and that the rate of return was guaranteed and far in excess of normal investment returns. That's the high risk or that's the high rate, but you were looking for the high rate return language. I think that's what you're referring to. That's correct. Now, the indictment in this case, the Seattle case, has a paragraph that is very similar language, almost identical. It's kind of standard DOJ charging language for these types of cases, if I recall correctly. Is that the link that they were trying to make? Those two paragraphs, effectively? Yes, but it was the exact same kind of conduct and the exact same kind of misrepresentations about the nature of the investment. Was the indictment the only information that the jury was given about the evidence concerning this prior conviction? No, Your Honor. The plea petition was also admitted into evidence as an exhibit, and there was limited testimony about the conviction itself from the FBI case agent. And did the plea have a factual basis? Only to the extent it said using false pretenses to obtain the money. That last sentence, thank you for asking the question because it was a little confusing to figure out what exactly was presented to the jury. So, we have the indictment, we have the plea petition, there's that last paragraph in the plea petition where the defendant hand writes something? Yes. That's what you're referring to? Yes, and the testimony of the FBI agent about it. Okay. And really what was the most important use of it at trial was that the defendant never told the victim that he had this prior conviction. It was one of the many omissions as part of the pattern of misrepresentation here about the risks associated with it, all of the vetting that purportedly done about the investment. Wait, I'm sorry. I thought it was offered to show his intent. What did you just say about it? How do you think it was used? Well, it was offered to show intent, knowledge, and lack of mistake, that they weren't scammed by Yang, that he knew better. But it was pointed out, and I think part of its relevance here is that this is one of the things that the defendant had done and knew about and raised his suspicions of Yang along with many other things that he never told the defendant. And that was argued to the jury that he should have told- It was raised in both cross-examination of some of the government's witnesses and argued to the jury. When the jury is instructed on that evidence coming in, was it instructed that this is coming in for two reasons? One is intent, the other is to show the lack of disclosure? Well, the court gave a limiting instruction both when it came in and at the close of evidence that it was for three purposes, intent, knowledge, and lack of mistake. So this idea that he should have disclosed it was not one of the purposes it was allowed for? I'm sorry. The idea that he should have disclosed the prior conviction to the victims is not one of the purposes? No. So I guess I'm confused because at the motion to eliminate hearing, the government said it was not offering it to show failure to disclose. Did that change during trial? Because I distinctly remember them discussing it and then they're like, well, we won't do that actually. We're actually going to introduce it just for 404B. So you're saying that it was argued to the jury that he had an affirmative duty to disclose this? I'm hesitant to commit to that. I view it as- I don't have a hard copy. I'm sorry. All right. So I- Closing argument in front of me, but- You might want to just double check that and you can always 28J afterwards to confirm that. My understanding is that that was discussed at the motions to eliminate hearing, but then was- they said they were not going to do that. I actually had a discussion with my law clerk about how they possibly could have done it, but they didn't. So I thought this case was just a straight 404B case. So yeah, obviously if it was an affirmative misrepresentation case, then that completely changes the analysis. But I- yeah. So just- if you could just double check that. Okay. I will confirm that and I'll file a 28J if I need to. I do think the quarter is correct. I'm still- can you just- like, so if you're a juror, what are you supposed to think about this? Can you just explain it again? I'm really still having trouble understanding. Okay. The defense here was that they didn't know any better, that they thought this was a real program and they weren't making misrepresentations about it to the victim. If you, among other things, that showed his knowledge of the program and the misrepresentations he was making, it was argued that this is relevant to show his intent to defraud, his knowledge. No, no. But what- so what is the jury supposed to understand about the past and then use that? How- can you explain? What is this 2012 thing supposed to be in the jury's head? Well, just that it intends to prove a material point about whether he had an intent to defraud at the time he was making representations to the victim. I thought the theory was that in this situation, if Mr. Matone was saying, gosh, I had no idea Mr. Yang was a bad guy, it's like, well, no, you knew because you know promises of high rate returns that are risk-free are not true, they're false. And the reason why you know they're false is because you've pleaded guilty to them being false. So that's why you knew when Mr. Yang came up, at least there was a warning to you that this was to know that these representations that Yang were making were false and the reason why you were trained because you pled guilty to it. I thought that was the reason why. And that was the reason, and that goes to knowledge and lack of a say. Yang wasn't in the prior crime, though, right? No. So he has to- the jury has to think that the fact that you once were part of a thing where you were promising high returns shows that now you know these aren't actually high returns, even though another witness thought it really was high returns in this case. Or when you saw all the other risk factors that were coming up in this case. I mean, he did know that in 2014, Yang had defrauded Jack Fugate, who testified in the trial, taken $40,000 from him and disappeared and never returned the money. He did know that Ola Kani had made an investment in 2012 with Mr. Yang, never got his money for that. So all that combined is- Those are arguments, I think, that this error, if it was an error, was harmless. I mean, I think there's a lot of evidence that he had intent, but I'm still just not sure how this 404B issue was correctly decided. Okay. And we have argued that if there's any error, it's harmless, given all the other evidence of what the defendant did know and all the misrepresentations he made over the course of this game. But I do think here the court gave it full consideration and it was not an abuse of discretion to admit the evidence he did. Did the district court know any more about that past crime than we can tell from this record? I don't believe so, Your Honor. At least not that it's on the record and I wasn't involved below. And did his factual basis match up with everything alleged in the indictment? I'm sorry, could you- Did the factual basis line up with everything alleged in the indictment? Yes. Every allegation? Yes. Well, wait, just to be clear about that, you're talking about the South Carolina case? Yes. So the South Carolina case, there's just the one statement at the end, so I think we need to be careful. In the factual basis, he did not say, I adopt each and every paragraph of the indictment, correct? He just had the one, it was a pretty thin, it was a pretty thin factual basis that was- Correct. But that is all that was presented at trial. But I think to answer your question, I think the answer is he did not say, yes, I agree with every paragraph in the indictment. It was a pretty thin read. That's correct. Okay. If the court has no other questions, I'll submit the other matters on the briefs. All right. Thank you, counsel. Thank you. Thank you. Your honors, earlier you asked me a question of if the court knew that Mr. Matone intends to testify. Now this discussion of the 404B element did remind me of a portion of the transcript. I'm specifically referring to the 1ER43 transcript of March 1st, 2022. I believe that was the 404B argument specifically. Now, my reading of the transcript indicates that the court understands the only strategy forward if the 404B evidence is admitted is for Mr. Matone to testify. Specifically, the court says the only possible defense, this isn't a whodunit. This is a I did not intend to defraud. There was a mistake or action that occurred that I did not intend to see happen. I believe that right there, coupled with a question from Ms. Lee right before that, indicating, well, that is assuming that he's going to testify, right? I think it's very clear to the court at that juncture that the strategy would have to include Mr. Matone testifying. So for all the reasons we've previously stated, as well as the reasons in our brief, we are asking you to vacate and vacate the conviction of Mr. Matone in regards to this specific issue. Let me ask you while we still got you here. Certainly. On the 404B issue, I looked long and hard to find any cases where a previous fraud conviction could not be introduced as 404B in a next fraud case. And I looked across the country. I couldn't find a single case where it had been held that was improper to introduce one fraud conviction in the next fraud conviction case. Can you help us here? Is there a case you can point us to say, no, Judge Owens, you're wrong. Here's the case. No, Your Honor. While there's not a direct case I can point you to, I do think that the important distinction between the fraud elements from jurisdiction is that in Mr. Matone's first conviction, the element was an or statement, as opposed to in this jurisdiction, it was an and statement. I would therefore say that the elements required to prove that charge would vary just enough that it would not have been sufficient to introduce it here. Additionally, in terms of your question earlier in regards to the indictment, as a federal practitioner, we are well aware that the indictment is not evidence against you. And as he signed on that bottom, he did not agree to every line of the indictment. Therefore, it was not a harmless error for the judge to introduce that indictment to allow it to be used as evidence against him subsequently, and then not allow him to continue the trial in order to be able to testify in his own defense with a clear and stable mind. All right. Thank you very much, counsel. Thank you both for your briefing and your argument. This matter is submitted. Sir, is this your first argument in the Ninth Circuit? Yes. Well, we hope to see you again. Thank you. And hopefully with a little easier travel next time.
judges: OWENS, FRIEDLAND, Rayes